Justin Marceau (California Bar No. 243479)
2255 E. Evans Ave., Denver, CO 80208, jmarceau@law.du.edu

Matthew Liebman (California Bar No. 248861)
170 E. Cotati Ave., Cotati, CA 94931, mliebman@aldf.org

Matthew Strugar (California Bar No. 232951)
2154 W. Sunset Blvd., Los Angeles, CA 90026, matthew-s@petaf.org

Paige M. Tomaselli (California Bar No. 237737)
303 Sacramento St., 2nd Floor, San Francisco, CA 94111, ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner (California Bar No. 140968)
555 12th St., Suite 1230 Oakland, CA 94607, lbrueckner@publicjustice.net

Richard Alan Eppink (Idaho Bar No. 7503)
ACLU of Idaho Foundation, P.O. Box 1897, Boise, ID 83701, reppink@acluidaho.org

Maria Andrade, (Idaho Bar No. 6445)
3775 Cassia Street, Boise, ID 83705, mandrade@andradelegal.com

Attorneys for Plaintiffs

---

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

---

| | | |
|---|---|---|
| ANIMAL LEGAL DEFENSE FUND, et al., | ) ) ) ) | Case No. 1:14-cv-00104-BLW |
| Plaintiffs, | ) ) | PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN |
| v. | ) ) | SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT |
| LAWRENCE WASDEN, in his official capacity as Attorney General of Idaho, | ) ) ) | |
| Defendant. | ) | |

---

1.  In 2012, an undercover investigator working at Bettencourt Dairies' Dry Creek Dairy in Hansen, Idaho captured audiovisual recordings of workers using a moving tractor to drag a cow on the floor by a chain attached to her neck and workers repeatedly beating, kicking, and jumping on cows.

2.  The video led to widespread public condemnation.

3.  Five Bettencourt Dairy employees featured in the video were charged and convicted of animal cruelty.

4.  The Idaho Dairymen's Association is a trade industry organization that represents every dairy farmer and dairy producer in the state. *See* Affidavit of Bob Naerebout in Support of Motion to Intervene as Party-Defendant ("Naerebout Aff.") ¶ 3, Dkt. 16-1.

5.  The Idaho Dairymen's Association drafted and sponsored the bill that became I.C. § 18-702. *See* Naerebout Aff. ¶ 10.

6.  Senate Bill 1337, which eventually became codified as I.C. § 18-7042, was introduced in the Idaho Legislature on February 10, 2014.

7.  The history of the statute contains numerous references to whistleblowing activities conduct by animal rights activists relating to the various practices in industrialized animal agriculture.

8.  Senator Jim Patrick, sponsor of the Senate bill, compared undercover investigators to "marauding invaders centuries ago who swarmed into foreign territory and destroyed crops to starve foes into submission." John Miller, Disputed 'ag gag bill' advances in Idaho Senate, Salt Lake Tribune, Feb. 11, 2014, *available at* http://www.sltrib.com/sltrib/money/57530112-79/animal-idaho-bill-measure.html.csp.

9.      Sen. Patrick, speaking of animal activists in a committee hearing, stated: "[T]errorism has been used by enemies for centuries to destroy the ability to produce food and the confidence in the food's safety. This is clear back in the 6th century B.C." Arguing in support of the legislation, Sen. Patrick said, "This is how you combat your enemies." Sen. Patrick, Declaration of Jo Ann Wall submitted in Support of Plaintiffs' Motion for Summary Judgment ("Wall Decl."), Ex. A, p. 81, lns. 1-8.

10.     Representative Linden Bateman called animal protection organizations that encourage undercover whistleblowing "extreme activists who want to contrive issues simply to bring in the donations."  Rep. Bateman, Wall Decl., Ex. D, p. 4, lns. 5-7.

11.     Representative Donna Pence indicated that the bill was directed at protecting factory farms from campaigns by animal rights groups, stating that, "By releasing the footage to the Internet, with petitions calling for a boycott of products of any company that bought meat or milk from Bettencourt Dairy, the organizations involved then crossed the ethical line for me." Rep. Pence, *Pence Legislative 2014 Update Week 7*, Donna Pence Legislative Updates & news (Feb. 21, 2014), https://representativepence.wordpress.com/2014/02/21/pence-legislative-2014-update-week-7/, *archived at* http://perma.cc/K4BB-F9GS.

12.     Representative Gayle Batt, speaking of the Idaho Dairymen's Association's involvement in the legislation, stated, "The dairy industry decided they could no longer be held hostage by such threats. They could not allow fellow members of the industry to be persecuted in the court of public opinion. It was then that th[e]y were convinced that they had to go forward with this legislation." Rep. Batt, Wall Decl., Ex. D, p. 2, lns. 17-19.

13.     Another representative stated that a problem occurs "when groups take that information and then publicly crucify a company." Rep. Erpelding, Wall Decl., Ex. C, p. 14, lns. 7-10.

14.     Representative Batt testified, "[The statute] protects our farm families and agricultural operations from extremists who use tactics of threat, force, misrepresentation, or trespass to gain access to facilities and gain information." Rep. Batt, Wall Decl., Ex. D, p. 1, lns. 10-12.

15.     Dan Steeson, one of the drafters of the legislation, stated: "The most extreme conduct that we see threatening Idaho dairymen and other farmers occurs under the cover of false identities and purposes, extremist groups implement vigilante tactics to deploy self-appointed so-called investigators who masquerade as employees to infiltrate farms in the hope of discovering and recording what they believe to be animal abuse." Mr. Steenson, Wall Decl., Ex. C, p. 8, lns. 25-26, p. 9, lns. 1-3.

16.     Mr. Steenson further stated: "After the infiltrator's work is done, the vigilante operation assumes the role of prosecutor in the court of public opinion by publishing edited recordings and advocating that the farmer's customers go elsewhere." Mr. Steenson, Wall Decl., Ex. C, p. 9, lns. 4-6.

17.     A representative of the Idaho Farm Bureau, Idaho's largest farm advocacy organization, testified, "The clandestine activities of anti-agriculture activists have also been increasing in recent years. Their actions have become more aggressive and more brazen, and some would even say, more desperate." Russ Hendricks, Wall Decl., Ex. C, p. 24, lns. 21-24.

18.     The Idaho Farm Bureau representative stated that, with regard to animal rights activists, "[c]reating the illusion of problems is what pays their salary." Russ Hendricks, Wall Decl., Ex. C, p. 25, ln. 10.

19.     Tony VanderHulst, President of Idaho Dairyman's Association, testified that "This is about exposing the real agenda of these radical groups that are engaging in farm terrorism. Activists use intimidating tactics to damage the business of the producers and their customers. These farm terrorists use media and sensationalism to attempt to steal the integrity of the producer and their reputation, and their ability to conduct business in Idaho by declaring him guilty in the court of public opinion. Why should those who lie, are deceitful, misrepresent themselves, and openly have an anti-animal/agriculture agenda be allowed to masquerade under the banner?" Mr. VanderHulst, Wall Decl., Ex. C, p. 30, lns. 3-12.

20.     Bob Naerebout, Executive Director of the Idaho Dairymen's Association, testified, "This impacts our industry. So, you have to look and say, you know, you don't stand up on a soapbox and broadcast that." Mr. Naerebout, Wall Decl., Ex. A, p. 75, lns. 9-11.

21.     Brent Olmstead, Executive Director of Milk Producers of Idaho, stated that "media-savvy" activists "know how to spin a story, and they use that story against dairymen." Mr. Olmstead, Wall Decl., Ex. C, p. 37, lns. 17-19.

22.     Jim Lowe, representing Food Producers of Idaho, testified that "this business of sneaking footage that can be edited and released in a media campaign is not about painting a full picture.  It's about a campaign to mislead and intimidate producers, processors and consumers." Mr. Lowe, Wall Decl., Ex. C, p. 41, lns. 6-8.

23.     Senate Bill 1337 passed the Idaho Senate on February 14, 2014 by a 23-10-2 vote.

24     Senate Bill 1337 passed the Idaho House of Representatives on February 26, 2014 by a 56-14-0 vote.

25.    On February 28, 2014, Idaho Governor C.L. "Butch" Otter signed Senate Bill 1337, which became codified at I.C. § 18-7042 (2014).

26.    I.C. § 18-7042 created a crime of "interference with agricultural production." The full text of the statute reads:

(1) A person commits the crime of interference with agricultural production if the person knowingly:

(a) Is not employed by an agricultural production facility and enters an agricultural production facility by force, threat, misrepresentation or trespass;

(b) Obtains records of an agricultural production facility by force, threat, misrepresentation or trespass;

(c) Obtains employment with an agricultural production facility by force, threat, or misrepresentation with the intent to cause economic or other injury to the facility's operations, livestock, crops, owners, personnel, equipment, buildings, premises, business interests or customers;

(d) Enters an agricultural production facility that is not open to the public and, without the facility owner's express consent or pursuant to judicial process or statutory authorization, makes audio or video recordings of the conduct of an agricultural production facility's operations; or

(e) Intentionally causes physical damage or injury to the agricultural production facility's operations, livestock, crops, personnel, equipment, buildings or premises.

(2) For purposes of this section:

(a) "Agricultural production" means activities associated with the production of agricultural products for food, fiber, fuel and other lawful uses and includes without limitation:

(i) Construction, expansion, use, maintenance and repair of an agricultural production facility;

(ii) Preparing land for agricultural production;

(iii) Handling or applying pesticides, herbicides or other chemicals, compounds or substances labeled for insects, pests, crops, weeds, water or soil;

(iv) Planting, irrigating, growing, fertilizing, harvesting or producing agricultural, horticultural, floricultural and viti-cultural crops, fruits and vegetable products, field grains, seeds, hay, sod and nursery stock, and other plants, plant products, plant byproducts, plant waste and plant compost;

(v) Breeding, hatching, raising, producing, feeding and keeping livestock, dairy animals, swine, furbearing animals, poultry, eggs, fish and other aquatic species, and other animals, animal products and animal byproducts, animal waste, animal compost, and bees, bee products and bee byproducts;

(vi) Processing and packaging agricultural products, including the processing and packaging of agricultural products into food and other agricultural commodities;

(vii) Manufacturing animal feed.

(b) "Agricultural production facility" means any structure or land, whether privately or publicly owned, leased or operated, that is being used for agricultural production.

(3) A person found guilty of committing the crime of interference with agricultural production shall be guilty of a misdemeanor and shall be punished by a term of imprisonment of not more

than one (1) year or by a fine not in excess of five thousand dollars ($5,000), or by both such fine and imprisonment.

(4) In addition to any other penalty imposed for a violation of this section, the court shall require any person convicted, found guilty or who pleads guilty to a violation of this section to make restitution to the victim of the offense in accordance with the terms of section 19-5304, Idaho Code. Provided however, that such award shall be in an amount equal to twice the value of the damage resulting from the violation of this section.

27.     The statute does not prohibit images and recordings produced by owners, operators, or others who would portray the agricultural industry in a favorable light. I.C. § 18-7042 (2014).

28.     The statute was intended to relate exclusively to the agricultural industry.

29.     Videorecordings made by undercover investigators employed at a California slaughterhouse precipitated the largest federal recall of beef in United States history. *See* Victoria Kim, Slaughterhouse in Chino agrees to settlement; The owners will pay $300,000 in a suit stemming from secretly shot footage, L.A. Times, Nov. 17, 2012, at 1.

30.     The videorecordings made by undercover investigators employed at the California slaughterhouse also precipitated a False Claims Act lawsuit that settled for $155 million in reimbursements to the federal government related to fraudulent certifications and representations regarding the handling and care of the animals in the facility. *See* Lian Flaccus, Settlement reached in California beef recall case, San Diego Union Tribune, Nov. 27, 2013, *available at* http://www.utsandiego.com/news/2013/nov/27/settlement-reached-in-calif-slaughterhouse-probe/.

31.     Videorecordings made by undercover investigators at the Clyde, North Carolina Osborne Dairy farm led the North Carolina Department of Environment and Natural Resources to cite the farm for six environmental violations related to improper disposal of animal waste. *See* Hayley Benton, WNC farm found in violation of improper animal waste disposal, Mountain Xpress (Ashville, N.C.), August 13, 2014, *available at* https://mountainx.com/news/wnc-farm-found-in-violation-of-improper-animal-waste-disposal/.

32.     Videorecordings made by undercover investigators at Triple F Ferret Farms in Bradford County, Pennsylvania prompted a Department of Labor investigation, which resulted in the Department of Labor citing the ferret farm for 38 violations of the Fair Labor Standards Act. *See* Declaration of Tracy Reiman in Support of Plaintiffs' Motion for Summary Judgment ¶ 11, Ex. A.

33.     Since 2011, laws seeking to criminalize undercover investigations of agricultural facilities have been proposed and failed (or have had the language criminalizing investigations removed by amendment) in Arizona (H.B. 2587) (2014); Arkansas (S.B. 14) (2013); California (A.B. 343) (2013); Florida (S.B. 1184 & H.B. 1021) (2012); Illinois (H.B. 5143) (2012), Indiana (S.B. 0184) (2012), (S.B. 373 & S.B. 391) (2013) (S.B. 101) (2014); Kentucky (H.B. 222) (2014); Minnesota (S.B. 1118 & H.F. 1369) (2012); Nebraska (L.B. 915) (2012), (L.B. 204) (2013); New Hampshire H.B. 110 (2013); New Mexico (S.B. 552) (2013), New York (S. 5172) (2012), Pennsylvania (H.B. 683) (2013), Tennessee (S.B. 3460 & H.B. 3620) (2013), (S.B. 1248 & H.B. 1191) (2014), Vermont (S. 162) (2013), and Wyoming (H.B. 1026) (2013).

34.     Since 2011, laws seeking to criminalize undercover investigations of agricultural facilities have passed in Iowa, Iowa Code Ann. § 717A.3A, Utah, Utah Code Ann. § 76-6-112, and Missouri, Mo. Ann. Stat. § 578.013, as well as Idaho.

35.     On March 13, 2014, Vice Media published an article by undercover investigative journalist Christopher Ketchum on illegal wolf hunting in Idaho. *See* Christopher Ketcham, How to Kill a Wolf, Vice Media, March 13, 2014, *available at* http://www.vice.com/read/how-to-kill-a-wolf-0000259-v21n3.

36.     On November 27, 2013, Boise, Idaho television station KTVB ran a segment involving undercover investigative reporting addressing panhandling in downtown Boise. *See* Uncovering the life of panhandling in Boise, KTVB 7, November 27, 2013, *available at* http://www.ktvb.com/story/news/local/2014/07/02/12051663/.

37.     On February 28, 2008, the Idaho Statesman published an article discussing an undercover investigation of a Boise family planning clinic. *See* Sandra Forester, Idaho Planned Parenthood apologizes for black baby remark, Idaho Statesmen, February 28, 2008, *available at* http://www.mcclatchydc.com/2008/02/28/28939/idaho-planned-parenthood-apologizes.html

38.     In 2008, Idaho Falls television station KIDK aired a segment by journalist Danielle Leigh involving an undercover investigation addressing the security practices of a local school. *See* Annenberg Media Center, Alumni, Danielle Leigh, *available at* http://www.atvn.org/alumni/DanielleLeigh. The investigation won an award from the Idaho Press Club in its "Watchdog/Investigate Report" category. *See* Idaho Press Club, 2008 Television Award Winners, *available at* http://www.idahopressclub.org/2008-television-award-winners/.

39.     Plaintiff Animal Legal Defense Fund conducts undercover investigations at animal facilities in furtherance of its mission and wishes to conduct an investigation at an agricultural production facility in Idaho but is prevented from doing so by the enactment of I.C. § 18-7042. *See* Declaration of Stephen Wells in Support of Plaintiffs' Partial Motion for

Summary Judgment at ¶¶ 6-10.

40.     Plaintiff People for the Ethical Treatment of Animals conducts undercover investigations at animal agriculture facilities in furtherance of its mission and wishes to conduct an investigation in Idaho but is prevented from doing so by the enactment of I.C. § 18-7042. *See* Declaration of Tracy Reiman in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 4-10.

41.     Plaintiff Idaho Concerned Residents for the Environment conducts undercover investigations at animal agriculture facilities in furtherance of its mission and wishes to conduct further investigations in Idaho but is prevented from doing so by the enactment of I.C. § 18-7042. *See* Declaration of Alma Hasse in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 5-14.

42.     Plaintiff Western Watersheds Project conducts investigations related to environmental issues in Idaho at agricultural production facilities in furtherance of its mission and wishes to continue conducting such investigations but is prevented from doing so by the enactment of I.C. § 18-7042. *See* Declaration of Travis Bruner in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 7-9.

43.     Plaintiff Blair Koch is an investigative journalist whose work requires her to enter agriculture facilities without permission to obtain recordings or photos. Ms. Koch's investigations are criminalized by I.C. § 18–7042, which denies Ms. Koch the ability to continue to investigate and report on important agriculture matters that otherwise would go unreported. *See* Declaration of Blair Koch in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 3-8.

44.     Plaintiff Daniel Hauff is an expert on employment-based undercover

investigations at animal agricultural operations. The existence of I.C. § 18-7042 prevents Mr. Hauff from pursuing consulting opportunities on undercover investigations in Idaho and injures him financially by depriving him of such consulting opportunities. *See* Declaration of Daniel Hauff in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 3-8.

45.     Plaintiff Monte Hickman is a former dairy worker who has been guaranteed employment as an undercover investigator in the animal agricultural industries. However, I.C. § 18–7042 makes it impossible for Mr. Hickman to engage in this work without risking criminal prosecution, thereby depriving him of a concrete opportunity to engage in political speech, pursue a new profession, and obtain financial benefit. *See* Declaration of Monte Hickman in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 2-9.

46.     Plaintiff CounterPunch is injured by I.C. § 18-7042 because the law prevents it from obtaining material it relies on in its journalism. *See* Declaration of Joshua Frank in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 4-8.

47.     Plaintiff Will Potter is injured by I.C. § 18-7042 because the law prevents him from obtaining material he relies on in his journalism. *See* Declaration of Will Potter in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 6-9.

48.     Plaintiff James McWilliams is injured by I.C. § 18-7042 because the law prevents him from obtaining material he relies on in his academic work. *See* Declaration of James McWilliams in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 6-9.

49.     Plaintiff the American Civil Liberties Union of Idaho and its members rely on information obtained from undercover investigations and from records obtained using the Idaho Public Records Law in their advocacy on civil liberties and other issues. *See* Declaration of Leo Morales in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 4-13.

50.     Plaintiff Farm Sanctuary relies on information obtained from undercover investigations in its advocacy on animal welfare issues. *See* Declaration of Bruce Friedrich in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 6-10.

51.     Plaintiff Center for Food Safety relies on information obtained from undercover investigations in its advocacy on food safety issues. *See* Declaration of  Andrew Kimbrell in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 9-10.

52.     Plaintiff River's Wish Animal Sanctuary relies on information obtained from undercover investigations in its advocacy on animal welfare issues. *See* Declaration of Kathleen Jagoda in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 8-16.

53.     Plaintiff Sandpoint Vegetarians relies on information obtained from undercover investigations in its advocacy on environmental and animal welfare issues. *See* Declaration of Eric Ridgway in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 6-8.

54.     Plaintiff Farm Forward relies on information obtained from undercover investigations in its advocacy on food policy, animal welfare, and environmental issues. *See* Declaration of  Aaron Gross in Support of Plaintiffs' Partial Motion for Summary Judgment at ¶¶ 5-11.

Dated this 18th Day of November, 2014

/s/ Justin Marceau
Justin Marceau, (*Pro Hac Vice*)
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Matthew Liebman, (*Pro Hac Vice*)
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Matthew Strugar (*Pro Hac Vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
(323) 210-2263
matthew-s@petaf.org

Paige M. Tomaselli (*Pro Hac Vice*)
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
(415) 826-2770
ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner (*Pro Hac Vice*)
Public Justice
555 12th St., Suite 1230
Oakland, CA 94607
lbrueckner@publicjustice.net

Richard Alan Eppink, ISB no. 7503
American Civil Liberties Union
of Idaho Foundation
P.O. Box 8791
Boise, ID 83701
(208) 344-9750, ext. 1202
reppink@acluidaho.org

Maria Andrade, ISB no. 6445
3775 Cassia Street
Boise, ID 83705
(208) 342-5100, ext. 102
mandrade@andradelegal.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of November, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Clay Smith clay.smith@ag.idaho.gov
Carl J. Withroe carl.withroe@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO

Thomas C. Perry tom.perry@gov.idaho.gov
Cally A. Younger cally.younger@gov.idaho.gov
OFFICE OF THE GOVERNOR OF IDAHO

*Attorneys for Defendants*

DATED this 18th day of November, 2014.

/s/ Maria Andrade