Justin Marceau (California Bar No. 243479)
2255 E. Evans Ave., Denver, CO 80208, jmarceau@law.du.edu

Matthew Liebman (California Bar No. 248861)
170 E. Cotati Ave., Cotati, CA 94931, mliebman@aldf.org

Matthew Strugar (California Bar No. 232951)
2154 W. Sunset Blvd., Los Angeles, CA 90026, matthew-s@petaf.org

Paige M. Tomaselli (California Bar No. 237737)
303 Sacramento St., 2nd Floor, San Francisco, CA 94111, ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner (California Bar No. 140968)
555 12th St., Suite 1230 Oakland, CA 94607, lbrueckner@publicjustice.net

Richard Alan Eppink (Idaho Bar No. 7503)
ACLU of Idaho Foundation, P.O. Box 1897, Boise, ID 83701, reppink@acluidaho.org

Maria Andrade, (Idaho Bar No. 6445)
3775 Cassia Street, Boise, ID 83705, mandrade@andradelegal.com

Attorneys for Plaintiffs

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ANIMAL LEGAL DEFENSE FUND,** *et al.*, | Case No. 1:14-00104-BLW |
| Plaintiffs, | **PLAINTIFFS' BRIEF ON THE REMEDY** |
| v. | |
| **C.L. "Butch" Otter, in his official capacity as Governor of Idaho,** *et al.*, | |
| Defendants. | |

The parties agree that a declaratory judgment and permanent injunction prohibiting enforcement of the law are appropriate remedies for the facial unconstitutionality of I.C. § 18-7042.  The parties' chief disagreement about the remedy in this case is whether the defendant should be required to give public notice of the statute's unconstitutionality.  Because giving public notice is both ministerial and easy for the defendant to do, would prevent the chilling of free speech, and would promote due process by providing fair notice of the law, a public notice injunction is appropriate in this case.

## ARGUMENT

This Court has "broad discretionary power" in fashioning equitable remedies.  *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)).  "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944).  In constitutional adjudication, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable."  *New York v. Cathedral Academy*, 434 U.S. 125, 128 (1977) (quoting *Lemon*, 411 U.S. at 200)).  "In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved," the Supreme Court has explained.  *Lemon*, 411 U.S. at 201 (plurality opinion).  In deciding whether a particular injunction is appropriate, the Court considers whether (1) there would be irreparable injury in the absence of an injunction, (2) remedies at law are inadequate, (3) an equitable remedy is

warranted considering the balance of hardships, and (4) the injunction would not disserve the public interest. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 141 (2010).

## 1. Irreparable Injury.

Here, allowing I.C. § 18-7042 to remain listed on official websites and in the official Idaho Code as if it were an enforceable statute will cause irreparable injury—as a matter of long-standing constitutional law. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Chilling of the exercise of First Amendment rights is alone sufficient to establish irreparable injury. *See American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1057 (9th Cir. 1995). The very existence of an unconstitutional statute itself chills protected speech. *See Secretary of State of Maryland v. Joseph H. Munson Co*., 467 U.S. 947, 964 n.12 (1984); *Peachlum v. City of York*, 333 F.3d 429, 435 (3d Cir. 2003). The harm, of course, is self-censorship, and it "can be realized without an actual prosecution." *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393 (1988). The Supreme Court has for a long time shown special concern for self-censorship because "First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the in terrorem effect of the statute." *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977). The public notice injunction that the plaintiffs request is tailored to remedy that in terrorem effect.

The Supreme Court has also long held that the Constitution requires governments to give fair notice, to the ordinary person, of what the law is. *United States v. Harriss*, 347 U.S. 612, 617 (1954). "No one may be required at peril of life, liberty or property to speculate as to the

3

meaning of penal statutes." *Lanzetta v. New Jersey*, 601 U.S. 451, 453 (1939).  Accordingly, due

process mandates that laws give notice of what is prohibited in a way that people of "ordinary

intelligence" can understand.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  By

continuing to publish I.C. § 18-7042 without accompanying notice of its unconstitutionality, the

State is doing worse.  If the defendants continue to publish I.C. § 18-7042 without accompanying

notice of unconstitutionality, ordinary citizens must do more than just speculate as the law's

meaning —they must overcome the State's misleading publication and look behind what will

appear to be a current, valid law.  *See, e.g.,*

http://legislature.idaho.gov/idstat/Title18/T18CH70SECT18-7042.htm  (official online version of

I.C. § 18-7042).[1]  This turns the purpose of the constitutional fair notice requirement—"to enable

the ordinary citizen to conform his or her conduct to the law"—on its head.  *Desertrain v. City of*

*Los Angeles*, 754 F.3d 1147, 1155 (2014) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 58

(1999).  The injunction that the plaintiffs request is tailored specifically to "give the ordinary

citizen notice of what is forbidden and what is permitted."  *Id.* at 60 (plurality opinion).  The

remedy is especially important in a case like this, because lack of fair notice "raises special First

---

[1] Although the Idaho Code Commission is responsible for contracting with publishing companies
to produce an annotated version of the Idaho Code that reflect "constitutional changes" as well as
"references . . . to federal court [decisions]," I.C. § 73-205, the apparently official online version
of the Idaho Code, at http://legislature.idaho.gov/idstat/TOC/IDStatutesTOC.htm, is not
annotated.  It is this online version, and not an annotated version, that the Attorney General links
on his website: http://www.ag.idaho.gov/publications/idahoStatutes.html.  Furthermore, the print
version of the Idaho Code produced for law enforcement officers—the Idaho Criminal Law and
Traffic Manual—does not contain annotations either.  *See*
http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?pageName=relatedProd
ucts&catId=&prodId=prod-us-bundle-23603-epub.

Amendment concerns because of its obvious chilling effect on free speech." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 872 (1997).

Due process also requires that the government give fair notice—and explicit standards—to those who enforce the laws. *Grayned*, 408 U.S. at 108–109. While unconstitutional statutes continue to published on official websites and in the official code books, there is a real risk that officers will mistakenly enforce them. *See Amore v. Novarro*, 624 F.3d 522, 533–534 (2d Cir. 2010) (granting qualified immunity to an officer who made an arrest for violation of a statute previously held unconstitutional, because the statute "continued to be published in official versions of the New York Penal Law"). This is no speculative danger in Idaho, either. In 2013, the Kootenai County Sheriff made public comments claiming that "[s]odomy is against the law in Idaho," despite that such laws had been clearly established as unconstitutional a decade earlier in *Lawrence v. Texas*, 539 U.S. 558 (2003). Jeff Selle, *KCSO may drop Boy Scouts charter*, COEUR D'ALENE PRESS, May 25, 2013, http://perma.cc/QDH7-8Q9Q.

Remedies like this, to address the effects of the existence of official records, are not novel. The federal courts have long upheld injunctions requiring preventive disclosures. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 181, 201 (1963); *see also, e.g., Bundy v. Jackson*, 641 F.2d 934, 947–948 (D.C. Cir. 1981) (directing a preventive injunction requiring the director of a public agency to inform employees about the law). Courts have also long recognized their authority to order expungement as an equitable remedy. *See Fendler v. U.S. Parole Commission*, 774 F.2d 975, 979 (9th Cir. 1985) ("Federal courts have the equitable power to order the expungement of Government records where necessary to vindicate rights

secured by the Constitution or by statute." (internal quotation marks omitted)).  Remedies, in

general, remain appropriate until relief has "completely and irrevocably eradicated the effects of

the alleged violation."  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260,

1275 (9th Cir. 1998).  In that case, employees of a state laboratory alleged that they had been

unconstitutionally subjected to medical testing.  *Id.* at 1264.  Though the defendants argued that

no relief could be granted because the testing program had since been cancelled, the Circuit held

that expunging official records about the testing would be an appropriate remedy:

> Even if the continued storage, against plaintiffs' wishes, of intimate medical
> information that was allegedly taken from them by unconstitutional means does
> not *itself* constitute a violation of law, it is clearly an ongoing 'effect' of the
> allegedly unconstitutional and discriminatory testing, and expungement of the test
> results would be an appropriate remedy for the alleged violation.

*Id.* at 1275.  The plaintiffs do not seek expungement of the statute in this case, but a more

narrowly tailored remedy intended to ensure the public has notice of the law.

    In fashioning equitable remedies, "the nature of the violation determines the scope of the

remedy."  *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16 (1971).  Here,

the nature of the violation is not just enforcement of the statute, but the official, authoritative

publication of the statute, which can chill anyone unaware of this Court's decision into

compliance with unconstitutional restrictions.  Where, as here, failure to take an affirmative

action would cause harm, a mandatory injunction like the public notice the plaintiffs request here

is appropriate.  *See Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984).

The goal of a prospective, equitable remedy is to restore those affected "to the position they

would have occupied in absence of such conduct."  *Milliken v. Bradley*, 433 U.S. 267, 280

PLAINTIFFS' BRIEF ON THE REMEDY

(1977).  As long as I.C. § 18-7042 remains officially listed as the law, the plaintiffs and the public will suffer because some will be deterred from "exposing misconduct to the public eye and facilitating dialogue on issue of considerable public interest." *ALDF v. Wasden*, ___ F. Supp. 3d ___, slip. op. (Dkt. 110) at 12 (Aug. 3, 2015). Worse, some may be erroneously arrested or charged for doing so.

## 2.  Inadequate Remedies at Law.

Besides the fact that chilling free speech is irreparable, because of the Eleventh Amendment there is no remedy at law that provides for damages against the State.  *See Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991).  Because of the qualified immunity doctrine, there may be no remedy at law even against officers who arrest or prosecutors who charge under I.C. § 18-7042.  In *Amore v. Novarro*, the Second Circuit granted qualified immunity to an officer who made an arrest under a statute that had previously been ruled unconstitutional.  624 F.3d 522, 526 (2d Cir. 2010).  The Second Circuit held that "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct."  *Id.* at 533–534.  Though the court acknowledged that the statute had been "authoritatively held to be unconstitutional," it nevertheless granted the officer immunity from suit because the statute "continued to be published in official versions of the New York Penal Law" and the officer "had not received instruction or information on the constitutionality of the statute."  *Id.* at 533, 534.

The result in *Amore* not only demonstrates why there is no adequate remedy at law, it underscores the danger of irreparable injury if this Court does not order permanent notice of I.C. § 18-7042's unconstitutionality, so that public officers as well as ordinary Idahoans know to conform their conduct to this Court's decision.

### 3. Balance of Hardships.

In crafting an equitable remedy, this Court should consider the minimal burden that public notice would impose on the defendant.  The defendant, as the Attorney General of Idaho, frequently undertakes to give the public fair notice of state law.  He maintains a website, www.ag.idaho.gov, that is "part of [his] personal commitment to providing Idahoans access to the information they require of their government."[2]  The defendant's website contains a number of "Educational and Legal Manuals" explaining Idaho law:

http://www.ag.idaho.gov/publications/manuals.html.  Many of those manuals explain the holdings of court decisions, including decisions of this Court.  *See, e.g.,* Lawrence Wasden, Attorney General of Idaho, Idaho Open Meeting Law Manual 32–34 (2015), http://www.ag.idaho.gov/publications/legalManuals/OpenMeeting.pdf; Lawrence Wasden, Attorney General of Idaho, Idaho Public Records Law Manual 63–66 (2015), http://www.ag.idaho.gov/publications/legalManuals/PublicRecordsLaw.pdf.  The defendant also publishes alerts and bulletins on his website, to inform the public about the results of court cases,

---

[2] The website also contains a link to an online version of the Idaho Code, http://www.ag.idaho.gov/publications/idahoStatutes.html, that is unannotated with explanations of court decisions; without an injunction, those who use that link will not find that this Court struck down I.C. § 18-7042 as unconstitutional.

Plaintiffs' Brief on the Remedy

*e.g.,* http://www.ag.idaho.gov/media/newsReleases/2015/nr_02262015.html, and explain

individual rights, *e.g.,* http://www.ag.idaho.gov/media/consumerAlerts/2008/ca_10022008.html.

Thus, there is no hardship for the defendant to provide public notice of I.C. § 18-7042's

unconstitutionality.  As Attorney General, he is already routinely informing the public about

Idaho law and court decisions that affect Idahoans.  He has the ready means to do so in this case.

On the other hand, the risk to free speech when the state-run website does not reflect this Court's

decision is great. The balance of hardships tips sharply in the plaintiffs' favor.

**4.  The Public Interest.**

There is a great public interest "in maintaining a free exchange of ideas."  *Sammartano v.*

*First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002).  As this Court recognized in its

summary judgment decision, the activities that I.C. § 18-7042 would have criminalized advance

"issues of considerable public interest," as well.  *ALDF*, slip. op. (Dkt. 110) at 12.  Granting a

fair notice injunction will only further those public interests by preventing self-censorship in the

face of the ongoing, misleading publication of I.C. § 18-7042 without a note informing

enforcement agents and the public that it is unconstitutional.

## CONCLUSION

The Court should enter an injunction that includes public notice provisions to ensure the

public has fair notice about this Court's decision striking down most of I.C. § 18-7042 as facially

unconstitutional.

Dated: September 9, 2015                                      Respectfully submitted,

/s/ Justin Marceau

9

PLAINTIFFS' BRIEF ON THE REMEDY

Professor Justin Marceau
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Matthew Strugar
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
(323) 210-2263
matthew-s@petaf.org

Matthew Liebman
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Paige M. Tomaselli
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
(415) 826-2770
ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner,
Public Justice
555 12th St., Suite 1230
Oakland, CA 94607
(501) 622-8150
lbrueckner@publicjustice.net

Richard Alan Eppink, ISB no. 7503

10
PLAINTIFFS' BRIEF ON THE REMEDY

American Civil Liberties Union
of Idaho Foundation
P.O. Box 8791
Boise, ID 83701
(208) 344-9750, ext. 1202
reppink@acluidaho.org

Maria Andrade, ISB no. 6445
3775 Cassia Street
Boise, ID 83705
(208) 342-5100, ext. 102
mandrade@andradelegal.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that on the 9th day of September, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Clay Smith clay.smith@ag.idaho.gov
Carl J. Withroe carl.withroe@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO

*Attorneys for Defendants*

DATED this 9th day of September, 2015.

                    /s/ Richard Eppink