LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CLAY R. SMITH, ISB #6385
CARL J. WITHROE, ISB #7051
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
clay.smith@ag.idaho.gov
carl.withroe@ag.idaho.gov
Attorneys for Defendant Wasden

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, *et al.* ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:14-cv-00104-BLW |
| ) | |
| vs. ) | **DEFENDANT WASDEN'S** |
| ) | **MEMORANUM RE FINAL** |
| C.L. "BUTCH" OTTER, in his official capacity ) | **JUDGMENT** |
| as Governor of Idaho; LAWRENCE WASDEN, ) | |
| in his official capacity as Attorney General of ) | |
| Idaho, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs won a grant of summary judgment in their on-the-face challenge to Idaho Code § 18-7042. They persuaded the Court that subsections 1(a) through (d) of that law violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The parties agree that an injunction preventing enforcement of the invalidated parts of the statute is appropriate given the Court's decision. But that is not enough for Plaintiffs. Their proposed judgment would force Attorney General Wasden to "provide public notice, including in the

official and online editions of the Idaho Code, that I.C. § 18-7042 is unconstitutional," to "prevent chilling speech." This the Court cannot do. Plaintiffs' sought-after remedy is not narrowly tailored to give them the relief to which they are entitled under ordinary injunction standards. Their proposed remedy additionally transgresses core Federalism and Eleventh Amendment principles. And not unexpectedly, Plaintiffs cite not a single apposite case in support of their "preventive disclosure" relief. This Court should reject their unprecedented and unjustifiable request and enter judgment as proposed by the Attorney General.

### 1. Plaintiffs' proposed remedy is not narrowly tailored to eliminate only the specific harm alleged.

Whatever "broad discretionary power" the federal district courts have to design equitable remedies, Pls.' Br. (Dkt. 112) at 2, that power is not limitless. Federal district courts must tailor injunctions narrowly to eliminate only the specific harm alleged. *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) ("an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled"); *accord Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Here, injunctive relief prohibiting enforcement of the statute is all that is necessary to give Plaintiffs complete relief. They claimed the statute violated their speech rights and was enacted with an improper purpose; it necessarily follows that all they are entitled to is liberty from its enforcement against them. If the statute is not enforced against them, their speech and equal protection rights are restored. Relief beyond non-enforcement—especially relief that is sought only for the benefit of nonparties—is unnecessary to vindicate their rights. They did not contend, and the Court did not rule, that notice to the public by the Attorney General is necessary to meet the obligations of the injunction—non-enforcement. *Cf. Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("[A]n injunction benefitting nonparties is

permissible *if such breadth is necessary to give prevailing parties* the relief to which they are entitled") (emphasis supplied). This is because neither the First nor the Fourteenth Amendments requires that state officials give public notice or education about the status of litigated statutes.

There is another problem with Plaintiffs' proposed remedy. It goes way beyond an injunction preventing the Attorney General from enforcing the invalidated portions of the statute. It requires affirmative conduct by the Attorney General that is disconnected from the underlying harm. This runs square into the rule that injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to Plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). This "applies with special force where there is no class certification." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 U.S. 644, 664 (9th Cir. 2011).

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987), shows these principles in action. There, seasonal forestry workers sued the Secretary of Labor and claimed the Secretary was wrong to decide that a worker-protection statute did not apply to seasonal forestry workers. The forestry workers sought a declaratory judgment that the act did apply to them, and an injunction requiring the Secretary to enforce it. The district court not only required the Secretary to enforce the act, but to take affirmative action in his enforcement of the statute, including giving notice to federal agencies and bidders on forest projects of the decision. This was too broad, the court said, because those specific directives—including the notice—"may not be necessary to enforce the Act against forestry labor contractors, and therefore requires more than is necessary to give complete relief to the plaintiffs." *Id.* at 1171. Here, it might be one thing if the notice Plaintiffs seek were necessary and directly related to vindicating their rights. But the notice they seek is untethered from what is necessary to give them the relief to which they are entitled. Because their requested remedy requires affirmative conduct by the Attorney General that is unnecessary

to give them the relief they are entitled to, it is more burdensome than is necessary. While Plaintiffs certainly may prefer federal supervision of state affairs, they are not entitled to see that vision materialize.

As a practical matter, Plaintiffs will have no trouble informing their own members and the public that Idaho Code § 18-7042 was invalidated. Many of the plaintiff organizations are large, national organizations with tremendous resources committed to marketing their views and efforts. The Animal Legal Defense Fund, for example, is a national organization, with over 110,000 members, and "spends significant resources" to challenge laws like Idaho Code § 18-7042. Compl. (Dkt. 1) ¶ 25. Its 2013 IRS 990 form shows the organization received more than $8.2 million in contributions and grants and had over $7.2 million in net assets or fund balances. *See* http://aldf.org/wp-content/uploads/2013/04/2013-ALDF-990.pdf.[1] ALDF's web site has a prominently located link to a whole page dedicated to this Court's ruling. *See* http://aldf.org/press-room/press-releases/idaho-ag-gag-law-ruled-unconstitutional-in-federal-court/. PETA needs little explanation: It's a massive, national organization with impressive celebrity support that includes Justin Bieber (http://www.peta.org/features/justin-bieber-promotes-adopting-animals/), Cloris Leachman (http://www.peta.org/blog/cloris-leachmans-salad-days/), and Charlize Theron (http://www.peta.org/features/charlize-theron-dogs-fur-trade/). It received over $50 million in contributions for 2014 and spent nearly $20 million on public outreach and education. *See* http://www.peta.org/about-peta/learn-about-peta/financial-report/. The Center for Food Safety has over 400,000 members (Compl. (Dkt. 1) ¶ 28); Farm Sanctuary has over 250,000 and claims to be the "largest animal rescue and protection organization in the United States," (*id.* ¶ 29). Western Watersheds Project has over 1,500 members and has field

---

[1] All cited Internet addresses were visited on September 14, 2015.

offices in Idaho, Montana, Wyoming, Arizona, California, and Oregon. *See* http://www.westernwatersheds.org/about/. It has a link to a page describing this Court's decision. *See* http://www.westernwatersheds.org/. Counterpunch is an "online journal of progressive politics, investigative reporting, civil liberties, art, and culture," and it has over 5,000 paid subscribers. Compl. (Dkt. 1) ¶ 35. If these organizations and their resources are inadequate to inform the public of this Court's decision, surely a notice in the Idaho Code is not going to accomplish the goal. The Court should reject Plaintiffs' invitation to award relief that is unnecessary and improper.

### 2. Federalism and Eleventh Amendment principles preclude Plaintiffs' proposed remedy.

Another defect in Plaintiffs' proposed remedy is that a mandatory injunction compelling the Attorney General to provide some form of public notice about the Court's ruling offends basic principles of Federalism by intruding unnecessarily on the functions of state government and, more specifically, the function of an elected constitutional officer. The Ninth Circuit has said more than once that "[d]ue to concerns of comity and federalism, the scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only." *Clark v. Coye*, 60 F.3d 600, 603-04 (9th Cir. 1995), citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1987). So, "in reviewing a district court's injunction against an agency of state government, we scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' federal constitutional and statutory rights but does not require more of state officials than is necessary to assure the compliance with federal law." *Id.*; *see also Consumer Party v. Davis*, 778 F.2d 140, 146 (3d Cir. 1985) ("federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs"); *Schwartz v. Dolan*, 86 F.3d 315, 319 (2d Cir. 1996)

("[f]ederal courts must take care to exercise a proper respect for the integrity and function of local government institutions") (alterations in original and citation omitted).

Plaintiffs' proposed remedy is not only inconsistent with the federal courts' understanding of, but is also too broad under, the Eleventh Amendment. State statutes or policies get invalidated by federal courts all the time. Yet Plaintiffs cannot cite one case where a federal district court ordered a state official to provide some kind of notice to the general public that a state statute has been ruled unconstitutional. There is a good reason for this: It can't be done.

*First*, Plaintiffs' suit against the Attorney General proceeds only under the narrow *Ex parte Young* exception[2] to state sovereign immunity. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011). Under that narrow exception, a federal court may issue an injunction against a state official tailored to stop ongoing violations of federal law. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2011). But, just as the Eleventh Amendment limits the nature of the suits that a person may bring against a state official in federal court, so too does it confine the universe of available remedies. *Ex parte Young* authorized negative injunctive relief prohibiting Attorney General Young from enforcing unconstitutional rate laws against railroad companies. The Court allowed the suit against Young—and allows *Ex parte Young* suits today—to protect people from the Hobson's choice of violating an unconstitutional state law or complying with it and foregoing rights protected by federal law. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). *Ex parte Young* did not, by contrast, authorize affirmative relief that is unrelated to the injunction preventing enforcement of the law—which is exactly what Plaintiffs' proposed remedy seeks.

---

[2] *Ex parte Young*, 209 U.S. 123 (1908).

*See Hopkins v. Clemson Agric. Coll.*, 211 U.S. 636, 642 (1911); *Ga. Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 304 (1952); *Younger v. Harris*, 401 U.S. 37 (1971). As Justice Kennedy has said, the shareholders' suit in *Ex parte Young* was "nothing more than a pre-emptive assertion in equity of a defense that would have been available in the State's enforcement proceedings at law." *Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1643 (Kennedy, J., dissenting). Affirmative relief like Plaintiffs seek is simply not authorized under the slim exception *Ex parte Young* established.

The linchpin of *Ex parte Young* relief is thus a direct enforcement responsibility, or "nexus," between the defendant officer and the challenged law. *E.g.*, *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). Here, Plaintiffs neither do nor can allege that the Attorney General has anything to do with online or hard copy publication of the Idaho Code. The Idaho Code Commission has the statutory authority to compile the State's laws. *Peterson v. Peterson*, 156 Idaho 85, 90, 320 P.3d 1244, 1249 (2014). The Attorney General does not have the authority to instruct the Code Commission about how to do it. *See* Idaho Code § 73-205. The Code Commission is not a party to this case, and so an injunction ordering it to do something would be invalid. *See Zepeda*, 753 F.2d at 727. Besides, the Idaho Code Commission is directed by statute to annotate its compilation of the laws, including references to the federal courts' rulings on them, so Plaintiffs' proposed remedy serves no purpose as to the Code's bound edition. Idaho Code § 73-205. As for the Internet version of the Idaho Code, the Legislative Services Office creates and posts the online version. Decl. Jackie Gunn ¶¶ 4, 5. As a Legislative Branch entity, it stands outside the Attorney General's supervision. To the extent Plaintiffs want the Court to order the Attorney General to publish their requested notice on *his* web site, that too is improper under the Eleventh Amendment. What the Attorney General

publishes on his web site in service to his constituents is not a matter for the federal courts to direct. *See, e.g., Knox v. Salinas*, 193 F.3d 123, 129-30 (2d Cir. 1999). It is enough for Plaintiffs to know (and they do) that specified paragraphs of the statute will not be enforced against them.

*Second*, *Ex parte Young* precludes so-called "notice relief" unrelated to preventing an *ongoing* federal law violation, and that is how Plaintiffs' proposed remedy is accurately characterized. *Green v. Mansour*, 474 U.S. 64 (1985). Once there is an injunction in place preventing enforcement of Idaho Code § 18-7042(1)(a) through (d), there is no ongoing violation. The statute will not be enforced so long as it is invalid, and there is no constitutional violation by not notifying the general public of a federal court decision invalidating a state statute. With no ongoing violation, *Ex parte Young* says that there is no more relief that can be given. The public notice Plaintiffs request is effectively notice to the public that the state violated the law in the past by enacting the law. This is not a case like *Quern v. Jordan*, 440 U.S. 332 (1978), where the Court endorsed notice relief that was ancillary—but, importantly, necessary—to some other form of proper relief. Their request for public notice is, as we have said, unnecessary to grant the Plaintiffs the relief they are entitled to. And so it is not available.

### 3. Plaintiffs' "preventative disclosure" authority adds nothing.

Plaintiffs argue that "[t]he federal courts have long upheld injunctions requiring preventative disclosures." Pls. Br. (Dkt. 112) at 5. They cite four cases in support of this proposition. None has even arguable relevance. Quickly:

- In *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180 (1963), the Supreme Court construed the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 to 80b-18c, to require disclosure of all facts material to the defendant investment advisor's interests in client recommendations without regard to "honest" or "dishonest" motives. *Id.* at 200-01. This is a far

different situation than exists here. A statute required certain conduct, and the defendant was not a state official.

- The court of appeals directed a broad "preventative remedy" in *Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir. 1981), to redress workplace sexual harassment by a District of Columbia agency; the remedy applied only to the agency and essentially required compliance with Equal Employment Opportunity Commission guidelines. *Id.* at 946-48. Again, the defendant was not a state official, and it is unclear whether the defendant raised any of the arguments we have raised here regarding the appropriate scope of the injunction.

- The Ninth Circuit found expungement of allegedly false statements about the plaintiff in agency records unnecessary in *Fendler v. United States Parole Commission*, 774 F.2d 975 (9th Cir. 1985), because he possessed the opportunity to challenge the statements in parole and/or habeas corpus proceedings. *Id.* at 979. The court there noted that expungement may be available where necessary to vindicate rights secured by the constitution. Here, though, public notice of a statute's unconstitutionality is unlike expungement of allegedly false statements about a plaintiff.

- In *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998), another Ninth Circuit panel reversed the district court's Fed. R. Civ. P. 12 and 56 determinations in the defendants' favor and held that injunctive relief for, *inter alia*, notification of all Laboratory employees of *past* medical testing activity might be appropriate were the plaintiffs to prevail on the merits. *Id.* at 1275. The court additionally rejected the defendants' mootness defense, based on the challenged testing's discontinuance, and in so doing observed, as quoted in Plaintiffs' brief (Dkt. 112 at 6), that continued storage of the samples would constitute "an ongoing 'effect' of the allegedly unconstitutional and discriminatory testing"

warranting "expungement of the test results." 135 F.3d at 1275.³ Thus the remedy was tailored to the plaintiffs—something much different than Plaintiffs seek here.

No dispute exists as to the common denominator among these decisions: the propriety of ancillary relief to redress prior proven or alleged unlawful conduct *by the defendant*. Here, the Attorney General neither adopted § 18-7042 nor sought to enforce the statute. He also has no connection to the Idaho Code's on-line or hard copy publication. Further distinguishing this controversy is the fact that the Court can do nothing about the statute's status "on the books." It thus cannot enter relief consistent with the Eleventh Amendment or legislative immunity principles requiring the Idaho Legislature to repeal the law or (in an effort at achieving the same result indirectly) to have it "expunged" from the Idaho Code. *See, e.g.*, *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 732 (1980). All this Court can do is to prevent enforcement of § 18-7042(1)(a) through (d)—and the judgment proposed by the Attorney General does precisely that.⁴

---

³ Plaintiffs rely on a fifth case, *Ferry-Morse Seed Co. v. Food Corn, Inc*., 729 F.2d 589 (8th Cir. 1984), for the notion that where "failure to take an affirmative action would cause harm, a mandatory injunction like the public notice the plaintiffs request here is appropriate." Pls. Br. (Dkt. 112) at 6. There, the court of appeals upheld a preliminary injunction that required the defendant to continue supplying the plaintiff with seed corn—something that the defendant had been doing prior to terminating its contract performance. Whether classified as prohibitive or mandatory, the injunction embodies nothing more than a garden-variety interlocutory remedy to preserve the parties' relationship pending resolution of the plaintiff's request for arbitration.

⁴ Plaintiffs' proposed judgment further seeks an injunction against enforcing "all other provisions of Section 18-7042 . . . insofar as they would suggest liability for violations of paragraphs (1)(a) through (d)." This gloss on the prohibition against enforcing § 18-7042(1)(a) through (d) contributes only impermissible ambiguity, and is unnecessary and impossible to comply with. *E.g.*, *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."). The injunction prohibits the paragraphs' enforcement; nothing more need or can be said in that regard.

DATED this 17th day of September 2015.

          STATE OF IDAHO
          OFFICE OF THE ATTORNEY GENERAL


         By */s/ Carl J. Withroe*
           CARL J. WITHROE

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of September 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that sent a Notice of Electronic Filing to the following persons:

Justin Marceau
jmarceau@law.du.edu

Matthew Liebman
mliebman@aldf.org

Matthew Strugar
matthew-s@petaf.org

Paige M. Tomaselli
ptomaselli@centerforfoodsafety.org

Richard Alan Eppink
reppink@acluidaho.org

Maria E. Andrade
mandrade@andradelegal.com

Thomas C. Perry
tom.perry@gov.idaho.gov

Cally A. Younger
cally.younger@gov.idaho.gov

Daniel V. Steenson
dan@sawtoothlaw.com

Celeste K. Miller
ck@mcdevitt-miller.com

David P. Claiborne
david@sawtoothlaw.com

Charles A Brown
CharlesABrown@cableone.net

Bruce D Brown
bbrown@bakerlaw.com

Leslie Brueckner
lbrueckner@publicjustice.net

Jeffery S. Gulley
jeffg@whistleblower.org

Norman M. Semanko
nms@moffatt.com

Rachel Meeropol
rachelm@ccrjustice.org

Michael J. Bartlett
bartlett@nbmlaw.com

Marty Durand
marty@idunionlaw.com

James M. Piotrowski
james@idunionlaw.com

Susannah W Pollvogt
susannah.pollvogt@washburn.edu

AND I HEREBY certify that I have mailed or served the foregoing to the following non-CM/ECF participant via U.S. Mail:

Deepak Gupta
Gupta Beck PLLC
1735 20th Street NW
Washington, DC 20009

                /s/ *Carl J. Withroe*
                  Carl J. Withroe