Justin Marceau (*Pro Hac Vice*)
2255 E. Evans Ave.
Denver, CO 80208
jmarceau@law.du.edu

Matthew Liebman (*Pro Hac Vice*)
Animal Legal Defense Fund
170 E. Cotati Ave.
Cotati, CA 94931
mliebman@aldf.org

Matthew Strugar (*Pro Hac Vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
matthew-s@petaf.org

Paige M. Tomaselli (*Pro Hac Vice*)
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner (*Pro Hac Vice*)
Public Justice
555 12th St., Suite 1230
Oakland, CA 94607
lbrueckner@publicjustice.net

Richard Alan Eppink (IBN 7503)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
reppink@acluidaho.org

Maria Andrade (IBN 6445)
3775 Cassia St.
Boise, ID 83705
mandrade@andradelegal.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **ANIMAL LEGAL DEFENSE FUND,** *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>**C. L. "BUTCH" OTTER**, in his official capacity as Governor of Idaho; **LAWRENCE WASDEN**, in his official capacity as Attorney General of Idaho,<br><br>*Defendants*. | Case No. 1:14-CV-00104-BLW<br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

In 2012, an undercover investigator captured audiovisual recordings of horrific abuse of dairy cows at a Wendell, Idaho dairy. The investigator's recordings drew national attention. In response to this *exposé*, Idaho legislators passed Idaho Code § 18-7042, a statute designed to prevent future investigations of this type. Plaintiffs brought suit challenging this statute as unconstitutional.

Plaintiffs prevailed at every step. This Court entered final judgment declaring the statute unconstitutional on November 12, 2015. Despite the favorable outcome, this result was not easily won. The defendant state (the "State") was unrelenting in its efforts to preserve § 18-7042: they filed, and lost, a Motion to Dismiss, and then forced Plaintiffs to relitigate the issues in that motion when, in their opposition to Plaintiffs' Motion for Summary Judgment, they challenged the Court's reasoning in its order. As a result, Plaintiffs were forced to spend significant time and resources fighting (and fighting again) arguments that were unsupported by established constitutional principles. Now, having fully prevailed, Plaintiffs seek fees and costs under 42 U.S.C. § 1988 for the expenses that they incurred in vindicating their constitutional rights. As this Court acknowledged orally on the record following the hearing on the summary judgment motion, this case presented cutting edge issues of constitutional law. The preparation and execution of a sound theory of the case in this instance was onerous and time consuming.

## Background

In 2012, an undercover investigator captured video of workers at Bettencourt Dairies' Dry Creek Dairy using a tractor to drag a cow on the floor by a chain attached to her neck, and repeatedly beating, kicking, and jumping on cows. (Dkt. 110 at 1.) The video garnered national attention. (*Id.*)

In response to the negative publicity generated by the release of the Bettencourt Dairies' footage, the Idaho Dairymen's Association—a trade industry organization which represents every dairy farmer and dairy producer in the state—drafted and sponsored a bill that became Idaho Code § 18-7042, Idaho's "Ag Gag" law. The statute criminalized precisely the types of under-

cover investigations that exposed the activities at Dry Creek Dairy. (*Id.* at 2.) Specifically, it prohibited investigators from (1) entering, obtaining records from, or obtaining employment with an agricultural production facility by force, threat, or misrepresentation (the "misrepresentation provisions"); (2) entering an agricultural production facility without the facility owner's consent and making audio or video records of the conduct of the facility's operations (the "audiovisual recording provision"); and (3) causing physical damage or injury to the agricultural production facility's operations, livestock, crops, personnel, equipment, buildings, or premises (the "physical damage or injury provision"). I.C. § 18-7042. Lawmakers expressly admitted that their purpose in supporting the bill stemmed from a perceived need to protect the industry from undercover investigators. (Dkt. 101 at 4-5.)

Plaintiffs, consisting of a coalition of animal and human rights organizations, journalists, and workers' associations, challenged this law on the grounds that it violated freedom of speech, freedom of the press, and the Equal Protection Clause; and that it was preempted by the False Claims Act, the Food Safety Modernization Act, and the Clean Water Act. (Dkt. 1.)

Plaintiffs prevailed at every stage of the litigation. First, on April 3, 2014, the State moved to dismiss Plaintiffs' claims, arguing that their First Amendment and Equal Protection claims were not cognizable as a matter of law, and that their preemption claims were not ripe for review. (Dkt. 12.) The Idaho Dairyman's Association sought to intervene in the case, and Plaintiffs opposed and ultimately prevented the intervention through motions practice. In addition, the Idaho Dairyman's Association filed a tardy (and lengthy) amicus brief just days before the oral argument, apparently in an effort to blindside Plaintiffs with new substantive arguments in defense of the statute. (Dkt. 50-1.) Plaintiffs spent considerable time both briefing an impromptu response to the amicus brief (Dkt. 58) and preparing for the oral argument with the amicus brief in mind.

Ultimately Plaintiffs won: On September 4, 2014, this Court denied the State's Motion to Dismiss Plaintiffs' claims relating to both the misrepresentation and audiovisual recording provi-

sions of the statute, dismissing only the challenge to the provision of the statute prohibiting "physical damage or injury."[1] (Dkt. 68 at 9.)

In so doing, the Court held that the statute *does* regulate speech and that, "[o]n its face," the law "targets one type of speech – speech concerning 'the conduct of an agricultural production facility's operations,' . . . but leaves unburdened other types of speech at an agricultural production facility." (Dkt. 68 at 22.) In addressing Plaintiffs' First Amendment claims, the Court held that § 18-7042 was facially content-based and viewpoint-discriminatory, and therefore "must survive the highest level of scrutiny to pass constitutional muster . . . ." (*Id.* at 24.) With regard to Plaintiffs' Equal Protection challenges, the Court agreed that "[l]aws based on bare animus violate the Equal Protection Clause." (*Id.* at 3.) The Court further observed that "ALDF alleges, as a factual matter, that the Idaho legislators acted with animus against animal-rights activists in passing" § 18-7042. (*Id.*)

Following this ruling, Plaintiffs moved for partial summary judgment on their First Amendment and Equal Protection Clause claims. (Dkt. 74-1.) In opposing Plaintiffs' motion, the State attempted to take a second bite at the proverbial apple, effectively requiring Plaintiffs to brief, for a second time, arguments already decided on the Motion to Dismiss: it argued that the Court erred in applying First Amendment principles to conclude that strict scrutiny applied to the misrepresentation and audio visual provisions of the statute. (Dkt. 88 at 9-12.) Plaintiffs had to expend further resources re-arguing issues in their Summary Judgment reply that had already been resolved on the Motion to Dismiss. Indeed, because the State's overlength opposition raised (and re-raised) such a large number of arguments that were not addressed in Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs were forced to request additional pages for their reply, and incur greater expenses than they would have if the State had not attempted to rehash already-settled issues. (Dkt. 92.)

---

[1] The Court also dismissed Governor C.L. "Butch" Otter as a defendant, but allowed the case to proceed against Attorney General Lawrence Wasden, a decision that did not impede Plaintiffs' ability to challenge the constitutionality of the statute in question.

The Court *yet again* correctly found that strict scrutiny applied to both the misrepresentation and audiovisual recording provisions of the statute (Dkt. 101 at 8-17), noting that "§ 18-7042 seeks to limit and punish those who speak out on topics related to the agricultural industry, striking at the heart of important First Amendment values." (*Id*. at 6). Under this standard, the Court held that "§ 18-7042 violates the First Amendment right of free speech," and granted summary judgment to Plaintiffs. (*Id*. at 8.)

With regard to their Equal Protection claim, Plaintiffs again prevailed. The Court held that "§ 18-7042 violates the Equal Protection Clause because it was motivated in substantial part by animus towards animal welfare groups, and because it impinges on free speech, a fundamental right." (*Id.*)

On November 12, 2015 the Court entered a final judgment permanently enjoining "enforcing, through any action or omission or otherwise, Section 18-7042(1)(a) through (d) of the Idaho Code." (Dkt. 116).

## Argument

Under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, plaintiffs in civil rights cases "should ordinarily recover an attorney's fee" whenever they prevail. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Awarding fees to prevailing plaintiffs in 42 U.S.C. § 1983 cases is "the rule rather than the exception." *Am. Broad. Co.'s, Inc. v. Miller*, 550 F.3d 786, 787 (9th Cir. 2008). The purpose of § 1988 is to "ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). This purpose will not be achieved unless prevailing plaintiffs' counsel recover a fee "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

In awarding fees under § 1988, the Court first determines whether the party seeking fees is the prevailing party. *Idaho Bldg. & Constr. Trades Council, AFL-CIO v. Wasden*, No. 1:11-CV-00253-BLW, 2012 WL 1313253, at *2 (D. Idaho Apr. 16, 2012). If so, then the Court de-

termines whether the fee amount requested is reasonable, using a two-step process: first, the Court determines the "lodestar" amount by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate; then, it adjusts the lodestar amount by a multiplier in appropriate cases. *Id.*

The lodestar amount is the "presumptively reasonable" fee. *Ballen v. City of Redmon*, 466 F.3d 736, 746 (9th Cir. 2006). If the plaintiffs submit appropriate time records for all work performed along with evidence of a reasonable hourly rate, it becomes the defendants' burden to rebut the lodestar amount with evidence challenging the accuracy and reasonableness of the plaintiffs' submissions. *See Gates v. Duekmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The Court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Unless the plaintiffs' attorneys recover fees for "*all* hours reasonably expended on the litigation," victims of civil rights abuse will find it difficult to attract competent counsel. *Hensley*, 461 U.S. at 435 (emphasis added). The Court's discretion to deny fees under § 1988 is "very narrow . . . ." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989).

## I.     Plaintiffs are the Prevailing Parties

A plaintiff who succeeds on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit [has] crossed the threshold to a fee award of some kind." *Playfair v. South Lemhi School Dist.*, No. CV09-375-BLW, 2010 WL 1138958, at *2 (D. Idaho Mar. 20, 2010) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989)) (internal quotation marks omitted). Only if the plaintiff's success is "purely technical or *de minimis*" could this Court ordinarily conclude that prevailing party status has not been achieved. *Playfair*, 2010 WL 1138958, at *2 (quoting *Texas State Teachers Ass'n*, 489 U.S. at 792).

Here, Plaintiffs' victory was nearly complete: the Court declared the misrepresentation and audiovisual recording provisions of the challenged statute (subsections (a) through (d)) as

unconstitutional, and permanently enjoined the enforcement of these provisions. (Dkt 116). In order to achieve this ultimate result, Plaintiffs won on two separate dispositive motions. First, the Court denied the State's Motion to Dismiss as to everything but the physical damage or injury provision, finding that the remaining provisions of the statute would be required to pass strict scrutiny in order to survive. (Dkt. 68.)

Then, on summary judgment, the Court affirmed its initial determination that strict scrutiny applied, and held that the subsections (a) through (d) of the statute were unconstitutional. (Dkt. 101.) Although the summary judgment did not include an order against Governor Otter, the decision "ended up affording all the relief that proved necessary." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716-17 (9th Cir. 2013). The Court entered a final judgment stating that the Defendant is permanently enjoined "and prohibited from enforcing, through any action or omission or otherwise, Section 18-7042(1)(a) through (d) of the Idaho Code." (Dkt. 116). Thus, there can be no doubt that Plaintiffs prevailed. *See Yuclan Intern., Inc. v. Arre*, 504 F. Supp. 1008, 1012 (D. Haw. 1980) (holding that plaintiffs were prevailing parties where portions of challenged ordinance were declared unconstitutional on summary judgment).

Because Plaintiffs are prevailing parties seeking a fee award, the next step is to compute the lodestar amount and any adjustments. *See Idaho Bldg. & Const. Trades Council*, 2012 WL 1313253 at *2.

**II.     The Amount of the Requested Fee Award is a Reasonable.**

Assessing the amount of fees to award involves a two-step process. First, the Court must calculate the lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *See, e.g.*, *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the Court must decide whether to adjust the lodestar figure based on several factors—identified in *Kerr v. Screen Guild Extras, Inc.*—to the extent those factors are not already subsumed in the initial lodestar calculation. *Id*. The relevant *Kerr* factors are: (1) time limitations imposed by the client or the circumstances, (2) the amount involved and the results ob-

tained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[2]

### A. The Lodestar Amount is Reasonable

#### 1. The Lodestar Framework

There is a "strong presumption that the lodestar figure," which is the number of hours expended multiplied by a reasonable hourly rate, "represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). Moreover, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit." *Hensley*, 461 U.S. at 435. Where they are the prevailing parties, "plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *See Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

The reasonable rate is "the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno*, 534 F.3d at 1113 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1983)). The Court may consider the novelty and complexity of the case, the special skill and experience of counsel, the quality of representation and the results obtained. *See id.* at 1114. "'Important public policy considerations dictate that [the court] should not punish an "undercharging" civil rights attorney,' but instead must award attorneys' fees based on prevailing market rates . . . ." *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) (quoting *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006)). The proper focus of the inquiry

---

[2] There are six additional Kerr factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, and (6) whether the fee is fixed or contingent. *Kerr*, 526 F.2d at 70. The Ninth Circuit has found that the first five of those factors, however, are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth Circuit held that the sixth factor may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

remains the rates "in line with those prevailing in the community for similar services provided by lawyers of reasonably comparable, skill, experience and reputation." *Blum*, 465 U.S. at 895 & n.11. In determining a reasonable hourly rate, the Court should consider "[a]ffidavits of plaintiffs' attorneys and other attorneys regarding prevailing fees in the community . . . ." *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Especially probative are rate determinations in other cases. *Blum*, 465 U.S. at 895 & n.11. It makes no difference "whether plaintiff is represented by private or nonprofit counsel." *Id.* at 895. Similarly, the analysis is not cost-based: it does not vary based on whether the attorney is with a large firm or a small non-profit. *Id.* at 896 & n.11.

Fees for time spent on nonprevailing claims should be denied only if those claims are "entirely distinct and separate" and "distinctly different *both* legally *and* factually." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (emphasis in original) (internal quotation marks omitted). In this case, all of the claims, both successful and unsuccessful, "arose out of the same 'course of conduct,'" *id.*—the legislature's passage of § 18-7042. Further, because the development and analysis of facts relating to the passage of this statute supported *all* claims originally included in Plaintiffs' complaint, the "work performed in connection with the unsuccessful claim[s] also aided the work done on the merits of the successful claim[s]." *Id.* (internal quotation marks omitted). Accordingly, the Plaintiffs here are entitled to recover attorneys' fees not only for their First Amendment and Equal Protection challenges to subsections (a) through (d) of § 18-7042, but also for their preemption claims, their claims relating to subsection (e) of the statute, and their allegations against Governor Otter. The research and argumentation, extremely limited though it was, relating to section (e) directly contributed to the overall argument regarding the content-based nature of the law.

### 2. The Rates Sought by Plaintiffs' Counsel are Reasonable

The rates sought by this motion are within the range of market rates routinely awarded to civil rights counsel of comparable skill, experience, and reputation in the District of Idaho. *See*

Declaration of Jason R.N. Monteleone at ¶ 7. Reasonable hourly rates may be "established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) *vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).

In 2015, the attorneys for whom fees are sought by this motion have been practicing law for 30 years (Chen), 28 years (Brueckner), 20 years (Andrade), 11 years (Marceau and Strugar), 10 years (Tomaselli), 9 years (Liebman and Eppink), and 4 years (Stella). Plaintiffs' counsel seek rates between $175 and $400 an hour.

These rates are within the range regularly approved in this district. In *Latta v. Otter*, No. 1:13-CV-00482-CWD, 2015 WL 4623817, at * 1 (D. Idaho, Aug. 3, 2015), the court approved a $400 an hour rate for attorney with 21 years' experience, $275 an hour for an attorney with 13 years' experience, and $175 for an attorney with 5 years' experience. Last year, the court approved rates of $275 an hour for work performed in 2009 by an attorney with then-3 years' experience, as well as a rate of $400 an hour for an attorney with more than thirty years' experience. *Cmty. House, Inc. v. City of Boise, Idaho*, No. 1:05-CV-00283-CWD, 2014 WL 1247758, at *5 (D. Idaho, Mar. 25, 2014). Again last year, the court approved rates of $200 an hour for a third-year associate, $280 an hour for an attorney with 10 years' experience, and $260 for an attorney with eight years' experience. *Asset Vision v. Creg Fielding*, No. 4:13-cv-288, Dkt. No. 105, at 7 (D. Idaho, Dec. 16, 2014).[3] Plaintiffs have also submitted evidence based on awards entered in this District to other public interest and civil rights attorneys as well as the opinion of those public interest and civil rights attorneys regarding the reasonable of the rates sought here. *See* Declaration of Craig H. Durham at ¶¶ 5-9; Monteleone Decl. at ¶ 7.

---

[3] Plaintiffs are also seeking compensation for a paralegal, Starr Shepard, at the rate of $95 an hour. Declaration of Maria Andrade at ¶ 10. This rate is well below the range of reasonable market rates for paralegals in this district. *Gibson v. Credit Suisse AG*, No. CV 10-1-JLQ, 2015 WL 5244972, at *7 n.8 (D. Idaho Sept. 8, 2015) ($150 an hour for paralegal work); *Latta v. Otter*, No. 1:13-CV-00482-CWD, 2015 WL 4623817, at *5 (D. Idaho Aug. 3, 2015) (same).

The evidence submitted by Plaintiffs amply supports the requested rates and conforms to the instructions from the courts as to how an applicant establishes a market rate. *United Steelworkers*, 896 F.2d at 407. *See also Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (declarations by plaintiffs' counsel and their peers about current billing are sufficient to establish prevailing market rates).

### 3. The Number of Hours Sought is Reasonable

Plaintiffs are entitled to compensation for all time "reasonably expended on the litigation." *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 242 (1985). *See also Hensley*, 461 U.S. at 440 (explaining that there is a presumption that the prevailing party will be compensated for all hours reasonably expended by its attorneys). Time is reasonably expended when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal citation and quotations omitted). This includes all "time spent in establishing entitlement to an amount of fees awardable under section 1988 . . . ." *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). *See also Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995) (explaining that compensable time includes time litigating fees motion).

As a general rule, courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. "[A]fter all, he won, and might not have, had he been more of a slacker." *Nadarajah*, 569 F.3d at 922. This rule applies with particular force in civil rights litigation, where compensation is contingent on victory, giving little incentive to bill excessive time.

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case;. . . .

*Moreno*, 534 F.3d at 1112.

Plaintiffs have provided detailed records with sufficient detail of what was done on each entry.[4] *See Hensley*, 461 U.S. at 436 n.12; *Fischer*, 214 F.3d at 1121. Plaintiffs have applied billing judgment and reduced all unnecessarily duplicative, excessive or unnecessary time. Strugar Decl. ¶ 12. First, all time incurred by counsel to review an email, court order, or other matter that took less than less than three minutes was eliminated. *Id*. Additionally, Plaintiffs are not seeking compensation (by either writing off or not billing in the first instance) for time spent on amici-related issues, press, potential plaintiffs who did not join the suit, and administrative tasks. *Id*. These writedowns accounted for more than 25 hours of time. *Id*. Plaintiffs are also not seeking fees for a number of attorneys and support staff in various offices who assisted on this matter. *See* Tomaselli Decl. ¶¶ 14, 16; Strugar Decl. ¶¶ 11, 13.

In addition, Plaintiffs have made an across-the-board deduction of 10% of their lodestar in an exercise of billing judgment. Strugar Decl. at ¶ 14.

The total number of hours for which compensation is requested is 980.04. *Id*. at ¶ 13. The lodestar calculations and the billing judgment deductions that counsel have already made are compiled in this table:

|  | Grad. Yr. | Rate | Total Hours | Lodestar | 10% Billing Reduction |
|---|---|---|---|---|---|
| **Attorneys** | | | | | |
| Justin Marceau | 2004 | $300 | 295.50 | $88,650.00 | $79,785.00 |
| Matthew Strugar | 2004 | $300 | 218.40 | $65,520.00 | $58,968.00 |
| Matthew Liebman | 2006 | $275 | 78.09 | $21,848.75 | $19,663.88 |
| Ritchie Eppink | 2006 | $275 | 73.80 | $20,295.00 | $18,265.50 |
| Leslie Brueckner | 1987 | $400 | 61.80 | $24,720.00 | $22,248.00 |
| Paige Tomaselli | 2005 | $290 | 85.7 | $24,853.00 | $22,367.70 |
| Maria Andrade | 1995 | $350 | 9.7 | $3,395.00 | $3,055.50 |

---

[4] *See* Declaration of Justin Marceau in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibit A; Declaration of Matthew Strugar in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibit A; Declaration of Matthew Liebman in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibit A; Declaration of Richard Eppink in Support of Plaintiffs' Motion for An Ward of Attorneys' Fees at Exhibit A; Declaration of Leslie Brueckner in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibit A; Declaration of Paige Tomaselli in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibits A & B; Declaration of Maria Andrade in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibits A & B; Declaration of Alan Chen in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at Exhibit A.

| Alan Chen | 1985 | $400 | 34.25 | $13,700.00 | $12,330.00 |
| Cristina Stella | 2011 | $175 | 58.2 | $10,185.00 | $9,166.50 |
| **Paralegal** | | | | | |
| Starr Shepard | | $95 | 64.6 | $6,137.00 | $5,523.30 |
| | **Total** | | **980.04** | **$279,303.75** | **$251,373.38** |

**B. Application of the *Kerr* Factors Support Plaintiffs' Requested Fee Award**

After computing these lodestar figures, the Court next must decide whether to adjust those figures based on the relevant *Kerr* factors: (1) time limitations imposed by the client or the circumstances, (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases.

Consideration of these factors in this case should suggest enhancing the fee award, if anything. The case arose under urgent circumstances. Governor Otter signed the § 18-7042 into law on February 24, 2014 as an "emergency provision," taking effect immediately upon the Governor's signature and instantaneously criminalizing Plaintiffs' and others' political speech. The emergency nature of the legislation forced Plaintiffs' counsel to divert attention from existing work to prepare their constitutional challenge to the law, which was filed only weeks after the law came into effect.

Plaintiffs immediately defeated the State's Motion to Dismiss the case and established that the law would be subject to exacting constitutional scrutiny. (Dkt. 68.) Plaintiffs also defeated two attempts by the animal agriculture industry to intervene as defendants to defend the law, and responded to arguments raised in multiple amicus briefs submitted in support of the law.

Plaintiffs then promptly moved for partial Summary Judgment on the First Amendment and Equal Protection claims. The Court granted that relief under each of the Plaintiff's theories

(Dkt. 101.), generating both local and national support. The final merits decision, striking down the law, garnered *worldwide* press coverage, including a *New York Times* Sunday editorial, as well as an *Idaho Statesman* editorial, celebrating this Court's decision. "US judge overturns state law banning secret filming of animal abuse at agricultural facilities," *Sydney Morning Herald* (Aug. 5, 2015), http://www.smh.com.au/environment/animals/us-judge-overturns-state-law-banning-secret-filming-of-animal-abuse-at-agricultural-facilities-20150805-girwny.html; New York Times Editorial Board, "Exposing Abuse on the Factory Farm," *New York Times* (Aug. 8, 2015), http://perma.cc/WSZ7-JR33; Idaho Statesman, "Statesman Editorial: 'Unconstitutional' ag-gag law simply ignored First Amendment rights," *Idaho Statesman* (Aug. 5, 2015), http://perma.cc/JY48-QEZF ("The so-called ag-gag law . . . is a sorry example of a special interest overreach that embraced the cries of lobbyists over First Amendment concerns and the state's reputation as a transparent food producer. That [the Court] would rule it unconstitutional this week should come as no surprise to anyone outside of the Idaho Legislature and the governor's office."); *see also, e.g.,* Matt Pearce, "Idaho's ban on undercover animal abuse videos struck down by federal judge," *Los Angeles Times* (Aug. 4, 2015), http://perma.cc/N2CR-8VBT; Luke Runyon, "Judge Strikes Down Idaho 'Ag-Gag' Law, Raising Questions For Other States," *NPR.org* (Aug. 4, 2015), http://perma.cc/QWL2-8JD9; *Poll: Idahoans Approve of Ruling that State's 'Ag Gag' Law is Unconstitutional*, IDAHO POLITICS WEEKLY (Oct. 6, 2015), http://idahopoliticsweekly.com/politics/621-poll-idahoans-approve-of-ruling-that-state-s-ag-gag-law-is-unconstitutional (evidencing 53% of Idahoans support the Court's ruling striking down the § 18-7042 law versus only 32% opposing it, with support across both ideological and geographic divides).

These results are more remarkable considering the undesirability of the case. As a prominent Idaho attorney explains in his declaration supporting this fee petition, the financial risk of

cases like this one make obtaining qualified counsel difficult and relatively few attorneys in Idaho have the experience and ability to litigate such cases. Durham Decl. ¶ 6; *see also* Eppink Decl. ¶ 13 ("it is likely that only a very few Idaho lawyers or firms would even consider providing substantial, on-the-record assistance with this case").

Yet, the impact of Plaintiffs' successes will extend far beyond Idaho. "Exposing an unconstitutional policy of this sort . . . does a great deal more than a finding that a plaintiff's rights have been infringed upon in some unspecified way. The [State] itself, and the community at large benefit from a finding of this sort . . . ." *Wilcox v. City of Reno*, 42 F.3d 550, 556 (9th Cir. 1994). More than two dozen similar Ag Gag bills have been introduced in numerous states since 2012 and the national attention to the ruling in this case is sure to act as a deterrent to states considering enacting similar laws in upcoming legislative sessions. *See, e.g.*, *After Idaho Ruling, More Ag Gag Challenges To Come*, HARVEST PUBLIC MEDIA (Sept. 7, 2015), http://netnebraska.org/article/news/989539/after-idaho-ruling-more-ag-gag-challenges-come. The Ninth Circuit also specifically pointed out why § 1988 fee awards are so important for ensuring that deterrent effect: "The congressional purpose in providing attorney's fees in civil rights cases was to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law." *Ackerley Commc'ns Inc. v. City of Salem*, 752 F.2d 1394, 1397 (9th Cir. 1985) (internal quotation marks omitted). "Section 1988 was enacted for the very purpose of influencing government entities to make thoughtful efforts to avoid civil rights violations." *Id*. at 1398.

Although the *Kerr* factors would suggest an upward adjustment in this case, Plaintiffs do not seek anything beyond the significantly-reduced lodestar figures they list in the table above.

14
BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

### III. THE PLAINTIFFS ARE ENTITLED TO RECOVER ALL OF THEIR COSTS

Under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and F.R.C.P. 54(d), the plaintiffs seek reimbursement of the costs typically awarded the prevailing parties in civil rights cases like this one. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003); *Balla v. Idaho State Bd. of Corr.*, Civ. No. 81-1165-S-BLW, 2013 WL 501646, at *6 (D. Idaho. Feb. 8, 2013) ("Rule 54(d) creates a presumption for awarding costs to prevailing parties."). The costs that the plaintiffs seek reimbursement for are all expenses usually billed to a client and therefore presumptively recoverable. *See Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (reimbursing counsel for transcript costs as they are "normally billed to fee-paying clients . . . ."); *see also Int'l Woodworkers v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985).

Plaintiffs seek costs in the amount of $3,919.62 as detailed in the Declaration of Matthew Strugar at ¶ 20.

### CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion and award $351,373.38 in fees and $3,919.62 in costs.

Respectfully submitted this 25th day of November, 2015.

/s/ Matthew Strugar
Matthew Strugar (*Pro Hac Vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
(323) 210-2263
matthew-s@petaf.org

Justin Marceau (*Pro Hac Vice*)
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6449
jmarceau@law.du.edu

Matthew Liebman, (*Pro Hac Vice*)
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533, ext. 1028
mliebman@aldf.org

Paige M. Tomaselli (*Pro Hac Vice*)
Center for Food Safety
303 Sacramento St., 2nd Floor
San Francisco, CA 94111
(415) 826-2770
ptomaselli@centerforfoodsafety.org

Leslie A. Brueckner (*Pro Hac Vice*)
Public Justice
555 12th St., Suite 1230
Oakland, CA 94607
lbrueckner@publicjustice.net

Richard Alan Eppink, ISB no. 7503
American Civil Liberties Union
of Idaho Foundation
P.O. Box 8791
Boise, ID 83701
(208) 344-9750, ext. 1202
reppink@acluidaho.org

Maria Andrade, ISB no. 6445
3775 Cassia Street
Boise, ID 83705
(208) 342-5100, ext. 102
mandrade@andradelegal.com

*Attorneys for Plaintiffs*