UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>C.L. "BUTCH" OTTER, in his official capacity as Governor of Idaho; LAWRENCE WASDEN, in his official capacity as Attorney General of Idaho;<br><br>                    Defendants. | Case No. 14-cv-00104-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. 117). The motion is fully briefed and at issue. Plaintiffs seek attorneys' fees of $255,398.38[1] and $3,919.62 in expenses. Defendants contend that the fee award should not exceed $182,352.43, and the expense award should not exceed $3,519.62. The Court has determined that oral arguments will not significantly assist the decisional process and will therefore consider the matters without a hearing. For the reasons explained below, the Court will award Plaintiffs a total of $249,875.08.

---

[1] This amount includes the additional $4,025 requested in attorneys' fees incurred in preparing the reply brief in support of the fee motion. *See Reply Br.*, Dkt. 131, at 10. *See also Errata*, Dkt. 118, and *Corrected Motion for Attorneys' Fees and Costs,* Dkt. 118-1 (correcting typographical errors).

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

In 2012, Mercy for Animals, a Los Angeles-based animal rights' group, released a video of workers abusing cows at the Bettencourt Dairies' Dry Creek Dairy in Hansen, Idaho. Mercy for Animals secretly captured the abuse while conducting an undercover investigation of the dairy. *Naerebout Aff.* ¶ 7, Dkt. 16-2. In response to the video, the Idaho Dairymen's Association wrote and sponsored Idaho Code § 18-7042, which was passed by the Idaho Legislature and signed by Governor Otter on February 28, 2014. Section 18-7042 created a new crime, "interference with agricultural production." In essence, it criminalized undercover investigations and videography at agricultural production facilities.

The Animal Legal Defense Fund, along with other organizations and individuals (collectively "ALDF") challenged Section 18-7042 as unconstitutional for infringing upon freedom of speech, freedom of the press, and the Equal Protection Clause. Further, ALDF claimed that the statute was preempted by a number of federal laws.

In September 2014, the Court denied the State's motion to dismiss the claims involving misrepresentation and the audiovisual recording provisions of Section 18-7042, but granted the State's motion to dismiss the challenge to the "physical damage or injury" provision of the statute. (Dkt. 68). Later, the Court granted summary judgment in Plaintiffs' favor on the First Amendment and Equal Protection Clause claims. (Dkt. 74-1). The Court applied strict scrutiny to the misrepresentation and audiovisual provisions of the statute and found that certain provisions of Section 18-7042 violate the First Amendment right of free speech. (Dkt. 101). The Court further concluded that the

**MEMORANDUM DECISION AND ORDER - 2**

statute violates the Equal Protection Clause, and entered a final judgment permanently enjoining defendants from enforcing Section 18-7042(1)(a) through (d). (Dkt. 116).

## ANALYSIS

### 1.  Plaintiffs' Entitlement to Fees

Prevailing parties in federal civil rights claims may be awarded reasonable attorneys' fees under 42 U.S.C. § 1988(b). A party prevails if it succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In a "prevailing party" analysis, the touchstone is whether there was a "material alteration of the legal relationship of the parties." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792–93 (1989). The legal relationship between the parties is altered when a party obtains an enforceable judgment or achieves "comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Plaintiffs prevailed here.  As noted above, the Court found that Sections 18-7041(1)(a) through (d) were unconstitutional and enjoined the defendants from enforcing them.  Further, the Court is not persuaded by Defendants' argument to exclude fees related to work done on the preemption claim.  While Defendants are correct that fee awards should not be granted for work performed on claims unrelated to the grant of relief, the "test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1441 (9th Cir. 1986).

**MEMORANDUM DECISION AND ORDER - 3**

Here, the preemption claim did not fail, but was mooted when Plaintiffs were granted an injunction based on their First and Fourteenth Amendment claims. *See* Dkt. 116. Additionally, the preemption claim sought to remedy the same course of conduct as the First and Fourteenth Amendment claims, via the same remedy—injunctive relief to prevent the defendant from enforcing the statute. Therefore, Plaintiffs are entitled to fees for work done on both the successful claims and the mooted claims.

## 2.  Reasonableness of Claimed Fees

After establishing that a plaintiff is entitled to attorneys' fees, the Court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Generally, the "lodestar figure," which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate, determines the amount of the award. *Id.* "There is a strong presumption that the lodestar figure represents a reasonable fee. Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).

However, the Court may adjust the lodestar figure based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975), *cert. denied,* 425. U.S. 951 (1976),[2] that have not been subsumed in the lodestar calculation. *Morales*, 96 F.3d at 363-64. Additionally, in civil rights litigation, "the degree of the plaintiff's overall

---

[2] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the processional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

**MEMORANDUM DECISION AND ORDER - 4**

success goes to the reasonableness" of a fee award." *Farrar v. Hobby,* 506 U.S. 103 (1992) (citing *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 793 (1989). Here, ALDF is seeking compensation for 980.04 hours billed at various rates to produce a lodestar figure of $279,303.75. *Pl. Brief* (Dkt. 118-2) at 12. In exercising billing judgment, however, ALDF made an across-the-board, 10% reduction, reducing the claimed hours to 980.04 and the lodestar figure to $251,373.38. *Id.* at 13; *Strugar Decl.* (Dkt. 117-2) ¶ 14.

### A.   Hourly Rate

To determine whether an hourly rate is reasonable, the district court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). Here, ALDF claims rates between $175 and $400. Defendants have not objected to the rates charged, and ALDF has adequately supported its rates. The rates claimed are therefore reasonable.

### B.   Hours Reasonably Expended

Under § 1988, prevailing parties may only be compensated for those hours of work that were "reasonably expended" on the litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The moving party bears the burden of establishing the hours claimed and must carry this burden by submitting adequate documentation of those hours. *Id.* at 437. Claimed hours "may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed and hours are duplicated, [or] if the

hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 2010 (9th Cir. 1986).

But the Court's discretion to reduce claimed hours is not unbounded, nor does it provide an opportunity for second-guessing when counsel exercises sound billing judgment. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

As noted above, Plaintiffs have submitted evidence that nine attorneys and one paralegal billed 980.04 hours to this case (which accounts for some writeoffs), which Attorney Strugar reduced by 10% across the board, "in an exercise of billing judgment." *See Strugar Dec.* (Dkt. 117-2) ¶¶ 14, 15.

Defendants object to the reasonableness of the hours claimed on several bases. First, Defendants generally contend that the hours billed are "grossly excessive." *Response Br.* (Dkt. 127) at 2. Second, Defendants object to time spent on specific components of the litigation – such as preparing the complaint, preparing or defending dispositive motions, and preparing for and engaging in oral argument. *Response Br.,* Dkt. 127, at 9-17.  The basic thrust of these more specific arguments is that Plaintiffs' counsel spent too much time on these tasks, or duplicated effort.

The Court has reviewed the billing records, the associated declarations, and the arguments advanced in the briefs.  After having done so, the Court is simply not persuaded that it should further reduce the attorney billings that have been submitted.  As

**MEMORANDUM DECISION AND ORDER - 6**

noted above, courts typically defer to the winning lawyer's professional judgment as to how much time was required.  Further, the Court is not persuaded that this case was over-lawyered in terms of the number of attorneys assigned to the case.  As the Ninth Circuit has observed, "participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  Rather, the salient question is not whether an attorney is "essential" to a task, but whether the hours expended by additional attorneys are reasonable considering the specific facts of the case. *See id.* at 1286-87. In this case, the Court concludes that the number of attorneys assigned to the case, as well as the hours billed, were reasonable considering the novelty of the legal issues and the magnitude of the hearings in this case.

In addition to objections to work performed by the attorneys, Defendant contends that work performed by paralegal Starr Shepard was actually clerical work, and must therefore be excluded.  On this point, Defendants have the better argument.  In fact, it does appear that the time Ms. Shepard billed to this case was dedicated to clerical work.  Specifically, Defendants point to time billed for tasks such as printing emails and forms, attending a press conference, copying, processing documents, filing documents, printing, entering expense information, filling out reimbursement requests, and so on.  *See Ex. 7 to Smith Dec.* (Dkt. 127-8).  The Court will therefore eliminate Ms. Shepard's time and associated fees ($5,523.30, after the 10% across-the-board reduction) from the fee award.  Thus, the $255,398.38 requested by plaintiff will be reduced to $249,875.08.

**MEMORANDUM DECISION AND ORDER - 7**

Finally, Defendant contends that the $400 filing fee in this case is not properly recoverable under § 1988, but is instead a "cost" under 28 U.S.C. § 1920. Although Defendants does not elaborate on this argument, it appears that it is objecting to the fact that Plaintiff did not file a separate bill of costs, as opposed to requesting the $400 within the fee motion. In this case, the Court will allow the $400 filing fee because: (1) the amount is relatively minimal and comprises a single line item; (2) Plaintiffs requested the $400 filing fee within the time frame for filing a bill of costs; (3) the fee motion was partly based on 28 U.S.C. § 1920; and (4) Defendants do not object, substantively, to Plaintiffs' recovery of the $400 filing fee.

## ORDER

**IT IS ORDERED THAT** Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. 117), as corrected (Dkt. 118-1), is **GRANTED** to the extent Plaintiffs are awarded $249,875.08 in fees, expenses, and costs. The motion is **DENIED** to the extent Plaintiffs request any additional amounts.

DATED: May 18, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court